JUDGE KENNELLY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGISTRATE JUDGE ASHMAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.   08 CR 398 |
| | ) | |
| | ) | Violations: Title 18, United States Code, |
| | ) | Sections 371, 666(a)(2), 666(a)(1)(B) |
| v. | ) | and 2 |
| | ) | |
| BENY GARNEATA, | ) | |
| DUMITRU CURESCU, | ) | |
| LAVINIA CURESCU, | ) | F I L E D |
| TEOFIL SCORTE, | ) | |
| WILLIAM WELLHAUSEN, | ) | |
| VASILE FOFIU, and | ) | AUG 1 4 2008 |
| MARIO OLIVELLA, | ) | |
| | | MICHAEL W. DOBBINS |
| **Count One** | | CLERK, U.S. DISTRICT COURT |

The SPECIAL JUNE 2007 GRAND JURY charges:

1.     At times material to this indictment:

   A.     The City of Chicago ("the City") was a unit of local government known as a municipal corporation, and a political subdivision of the State of Illinois. The functions and services provided by the City on behalf of its residents were coordinated through various agencies and departments. Two of the City's operational departments were the Department of Buildings and the Department of Zoning.

   B.     The principal function of the Department of Buildings was to conduct inspections to ensure that buildings conformed and were maintained according to the City's Building Code. If a building violated the Building Code, it would be referred to the Department of Administrative Hearings. The party responsible for the building would receive a notice of violation. The Department of Buildings had authority to issue a "stop work" order on property. Building

inspectors performed on-site investigation of projects to ensure compliance with the Building Code. The Department of Buildings maintained a database on its mainframe computer containing information on all buildings in the City, including the number of existing units in each building.

  C. The principal functions of the Department of Zoning were to enforce Chicago's Zoning Ordinance, to implement the city's land use policies and to maintain and update the city's official zoning maps. When a proposed development was not in compliance with the Zoning Ordinance or permitted use, a developer had the option of seeking an administrative adjustment or a zoning variance. In addition, the Department of Zoning was responsible for issuing Certificates of Occupancy (a certificate from the City certifying that a structure is fit for human habitation) for construction projects containing between one to three dwelling units and for issuing Zoning Compliance Certificates (a certificate from the City certifying that a structure meets the applicable zoning requirements) for the occupancy, use, or change of use of any property in the city. Zoning inspectors performed on-site investigation of projects to ensure compliance with the Zoning Ordinance and Certificate of Occupancy reviews.

**Individuals and Entities**

  D. BENY GARNEATA was a contractor and developer. GARNEATA was the owner/operator of M5 Electrical Contractors and M3 Plumbing.

  E. DUMITRU CURESCU was a contractor and developer and the president of Peppa Remodeling, and was the co-owner of the property located at 1637-39 West Granville, Chicago, Illinois ("the Granville property") along with his wife, co-defendant LAVINIA CURESCU.

  F. LAVINIA CURESCU was vice president of Peppa Remodeling, and was the co-owner of the Granville property with her husband, co-defendant DUMITRU CURESCU.

G. The Granville property was a multi-unit building undergoing extensive renovation, including plumbing, electrical, and heating, ventilation, and air conditioning ("HVAC") outfitting for each unit.

H. VASILE FOFIU was a plumber who worked for co-defendant GARNEATA.

I. MARIO OLIVELLA was employed as a Plumbing Inspector for the Department of Buildings. OLIVELLA had been an employee of the City of Chicago since June 15, 1998.

J. TEOFIL SCORTE was the owner of Algin Construction and Development ("Algin"). Algin provided architectural, construction and expediting services to contractors and developers.

K. WILLIAM WELLHAUSEN was a zoning investigator for the Department of Zoning. WELLHAUSEN had been employed with the City of Chicago since June 16, 1994.

L. Individual A was an expediter, a businessperson who, among other services, assists homeowners and other property developers in applying for and receiving City approval for construction projects. Unbeknownst to the defendants, as of May 21, 2007, Individual A was cooperating with the government.

2. From in or about June 2007 through in or about January 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DUMITRU CURESCU,
LAVINIA CURESCU,
TEOFIL SCORTE, and
WILLIAM WELLHAUSEN,

defendants herein, conspired and agreed with each other and others known and unknown to the Grand Jury, that defendant WELLHAUSEN would accept money and property from defendants

DUMITRU CURESCU and LAVINIA CURESCU and others, said money and property being given and accepted with the intent to influence and reward defendant WELLHAUSEN in connection with any business, transaction, and series of transactions of the City involving things of value of $5,000 or more, that is, conducting a favorable zoning inspection on the Granville property and related City approvals, the City being a local government that received in excess of $10,000 in federal funding in a twelve month period from June 1, 2007, through May 31, 2008, in violation of Title 18, United States Code, Section 666(a).

3. It was part of the conspiracy that defendants DUMITRU CURESCU and LAVINIA CURESCU offered and gave money to agents of the city, including defendant WILLIAM WELLHAUSEN, through Individual A, in exchange for and in order to influence official actions of the City that benefitted the renovation, and potential marketing and sale of the residential units in the Granville property.

4. It was further part of the conspiracy that defendant TEOFIL SCORTE concealed zoning violations at the Granville property by preparing false and fraudulent architectural plans in order to facilitate defendants DUMITRU CURESCU's and LAVINIA CURESCU's bribery of City officials.

5. It was further part of the conspiracy that defendant WILLIAM WELLHAUSEN accepted money in exchange for performing official actions by the Department of Zoning to benefit the financial interests of DUMITRU CURESCU, LAVINIA CURESCU, and TEOFIL SCORTE, including overlooking violations of the Zoning Ordinance at the Granville property.

6. It was further part of the conspiracy that defendants DUMITRU CURESCU, LAVINIA CURESCU, TEOFIL SCORTE and WILLIAM WELLHAUSEN concealed and hid, and caused to be concealed and hidden, the existence of and acts done in furtherance of the conspiracy.

**OVERT ACTS**

7. In furtherance of the conspiracy and to accomplish the objectives of the conspiracy, co-defendants DUMITRU CURESCU, LAVINIA CURESCU, TEOFIL SCORTE, and WILLIAM WELLHAUSEN committed one or more overt acts in the Northern District of Illinois, and elsewhere, which overt acts included but were not limited to the following:

a. On or about June 20, 2007, DUMITRU CURESCU telephoned Individual A and told Individual A that he had purchased a property as a 13 unit building and wished to obtain documentation authorizing additional residential units to the property.

b. Later on or about June 20, 2007, LAVINIA CURESCU called Individual A and identified the property as the Granville property, informing Individual A that LAVINIA and co-defendant DUMITRU CURESCU wished to add a unit that was "not legal."

c. On or about June 28, 2007, DUMITRU CURESCU agreed to pay Individual A up to $5,000 per unit to get zoning approval for the additional units.

d. In or about July 2007, DUMITRU CURESCU hired TEOFIL SCORTE to prepare architectural plans falsely reflecting three existing units in the Granville basement. In fact, as CURESCU and SCORTE well knew, there was only one existing unit in the basement.

e. On or about July 10, 2007, TEOFIL SCORTE told Individual A that he would prepare architectural plans falsely reflecting three existing units in the Granville basement.

f. On or about July 10, 2007, DUMITRU CURESCU indicated to Individual A that he was willing to pay an official in the Department of Buildings to change the data in the Department of Buildings mainframe computer to falsely reflect that the Granville property had 15 existing units, and also to pay an official in the Department of Zoning to approve the 15 units in an on-site inspection

of the Granville property. DUMITRU CURESCU indicated that Individual A would pass the payments on to the public officials.

g. On or about July 10, 2007, Scorte directed an architect in his employment to prepare architectural plans falsely reflecting three existing units in the Granville basement.

h. On or about July 25, 2008, DUMITRU CURESCU indicated to Individual A that he was willing to pay Individual A $2,500 for the Department of Buildings mainframe computer printout falsely reflecting three existing units in the basement of the Granville property, which amount CURESCU understood had been paid to someone in the Department of Buildings in order to influence the manipulation of data in the Department of Buildings mainframe computer.

i. On or about July 25, 2007, LAVINIA CURESCU wrote a check to "cash" that was negotiated at LaSalle Bank for $2,500 United States Currency, which currency was intended to be used to pay Individual A and, in turn, an official of the Department of Buildings, in exchange for the Department of Buildings mainframe computer printout.

j. On or about July 25, 2007, LAVINIA CURESCU gave Individual A $2,500 in U.S. currency in exchange for a copy of a City mainframe computer printout falsely reflecting three units in the basement of the Granville property.

k. On or about August 27, 2007, zoning investigator WILLIAM WELLHAUSEN agreed to accept a bribe in exchange for all 15 units in the Granville property passing inspection.

l. On or about August 29, 2007, zoning investigator WILLIAM WELLHAUSEN conducted an inspection of the Granville property in the presence of DUMITRU CURESCU, and wrote a report noting that the building had 15 proper existing units.

 m. On or about August 31, 2007, WILLIAM WELLHAUSEN accepted $8,000 United States Currency from Individual A as payment for the favorable inspection of the Granville property.

 n. On or about September 21, 2007, LAVINIA CURESCU gave Individual A $10,000 United States Currency as payment to co-defendant WELLHAUSEN for the favorable inspection of the Granville property.

 All in violation of Title 18, United States Code, Sections 371 and 2.

## Count Two

THE SPECIAL JUNE 2007 GRAND JURY further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. From in or about December 2007 through in or about January 2008, in Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DUMITRU CURESCU,
LAVINIA CURESCU,
BENY GARNEATA,
VASILE FOFIU and
MARIO OLIVELLA,

defendants herein, conspired and agreed with each other and others known and unknown to the Grand Jury, that defendant OLIVELLA would accept money and property from defendants DUMITRU CURESCU, LAVINIA CURESCU, VASILE FOFIU and BENY GARNEATA, said money and property being given and accepted with the intent to influence and reward defendant OLIVELLA in connection with any business, transaction, and series of transactions of the City involving things of value of $5,000 or more, that is, conducting favorable plumbing inspections on the Granville property, the City being a local government that received in excess of $10,000 in federal funding in a twelve month period from June 1, 2007, through May 31, 2008, in violation of Title 18, United States Code, Section 666(a).

3. It was part of the conspiracy that defendants BENY GARNEATA, DUMITRU CURESCU, LAVINIA CURESCU, and VASILE FOFIU offered and gave money to defendant MARIO OLIVELLA, an agent of the City, in exchange for and in order to influence official actions

of the City that benefitted the renovation, and potential marketing and sale of the residential units in the Granville property.

4. It was further part of the conspiracy that defendant OLIVELLA accepted money in exchange for performing official actions by the Department of Buildings to benefit the financial interests of DUMITRU CURESCU and LAVINIA CURESCU, including overlooking violations of the Building Code at the Granville property.

## OVERT ACTS

5. In furtherance of the conspiracy and to accomplish the objectives of the conspiracy, co-defendants DUMITRU CURESCU, LAVINIA CURESCU, BENY GARNEATA, VASILE FOFIU and MARIO OLIVELLA committed one or more overt acts in the Northern District of Illinois, and elsewhere, which overt acts included but were not limited to the following:

    a. On or about December 13, 2007, BENY GARNEATA called VASILE FOFIU and told FOFIU that GARNEATA would call MARIO OLIVELLA about a failed plumbing inspection at the Granville property.

    b. On or about December 20, 2007, MARIO OLIVELLA conducted an inspection of the Granville property in the presence of GARNEATA and FOFIU.

    c. On or about December 20, 2007, OLIVELLA approved the plumbing at the Granville property.

    d. Later on or about December 20, 2007, GARNEATA called FOFIU after speaking with OLIVELLA and told FOFIU that OLIVELLA wanted DUMTRU CURESCU to pay OLIVELLA $7,000.

e. On or about December 21, 2007, LAVINIA CURESCU endorsed and cashed a $7,000 check.

f. On or about December 21, 2007, GARNEATA, FOFIU and DUMITRU CURESCU met at a coffee shop so that CURESCU could give GARNEATA the $7,000 United States Currency.

g. Later on or about December 21, 2007, OLIVELLA met GARNEATA at GARNEATA's office in order to collect money from GARNEATA for passing the plumbing inspection at the Granville property;

All in violation of Title 18, United States Code, Sections 371 and 2.

## Count Three

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. Paragraphs 1-3 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about July 25, 2007, at Chicago, in the Northern District of Illinois, Eastern Division,

DUMITRU CURESCU and LAVINIA CURESCU,

defendants herein, corruptly gave, offered and agreed to give $2,500 to Individual A, with intent to influence and reward agents of the City of Chicago, in connection with any business, transaction, and series of transactions involving things of value of $5,000 or more, that is, obtaining a Department of Buildings mainframe computer printout reflecting 15 existing units in the Granville property, involving the City of Chicago, a local government that received in excess of $10,000 in federal funding in a twelve month period from June 1, 2007, through May 31, 2008;

In violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## Count Four

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. Paragraphs 1-3 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about September 21, 2007, at Chicago, in the Northern District of Illinois, Eastern Division,

DUMITRU CURESCU and LAVINIA CURESCU,

defendants herein, corruptly gave, offered and agreed to give $10,000 to Individual A, with intent to influence and reward WILLIAM WELLHAUSEN, an agent of the City of Chicago, in connection with any business, transaction, and series of transactions involving things of value of $5,000 or more, that is, a favorable zoning inspection of the Granville property, involving the City of Chicago, a local government that received in excess of $10,000 in federal funding in a twelve month period from June 1, 2007, through May 31, 2008;

In violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## Count Five

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. Paragraphs 1-3 of Count Two of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about December 21, 2007, at Chicago, in the Northern District of Illinois, Eastern Division,

>DUMITRU CURESCU,
>LAVINIA CURESCU,
>VASILE FOFIU, and
>BENY GARNEATA,

defendants herein, corruptly gave, offered and agreed to give $7,000 to MARIO OLIVELLA, an agent of the City of Chicago, with intent to influence and reward agents of the City of Chicago, in connection with any business, transaction, and series of transactions involving things of value of $5,000 or more, that is, a favorable plumbing inspection on the Granville property, involving the City of Chicago, a local government that received in excess of $10,000 in federal funding in a twelve month period from June 1, 2007, through May 31, 2008;

In violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## Count Six

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. Paragraphs 1-3 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about August 31, 2007, at Chicago, in the Northern District of Illinois, Eastern Division,

## WILLIAM WELLHAUSEN,

defendant herein, being an agent of the City, corruptly solicited and demanded, and accepted and agreed to accept, things of value, namely, $8,000 from Individual A, intending to be influenced and rewarded in connection with a business, transaction and series of transactions of the City involving something of value of $5,000 or more, that is, a favorable zoning inspection of the Granville property, involving the City, a local government that received in excess of $10,000 in federal funding in a twelve-month period from June 1, 2007, through May 31, 2008;

In violation of Title 18, United States Code, Section 666(a)(1)(B).

...

## Count Seven

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. Paragraphs 1-3 of Count Two of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about December 21, 2007, at Chicago, in the Northern District of Illinois, Eastern Division,

MARIO OLIVELLA,

defendant herein, being an agent of the City, corruptly solicited and demanded, and accepted and agreed to accept, things of value, namely, $7,000 from BENY GARNEATA, VASILE FOFIU, DUMITRU CURESCU and LAVINIA CURESCU, intending to be influenced and rewarded in connection with a business, transaction and series of transactions of the City involving something of value of $5,000 or more, that is, a favorable plumbing inspection of the Granville property, involving the City, a local government that received in excess of $10,000 in federal funding in a twelve-month period from June 1, 2007, through May 31, 2008;

In violation of Title 18, United States Code, Section 666(a)(1)(B).

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2007 GRAND JURY further alleges:

1. The allegations contained in Count One through Seven of this indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Sections 371 and 666, as alleged in the foregoing indictment,

> BENY GARNEATA,
> DUMITRU CURESCU,
> LAVINIA CURESCU,
> TEOFIL SCORTE,
> WILLIAM WELLHAUSEN,
> VASILE FOFIU, and
> MARIO OLIVELLA,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense.

3. The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to:

(a) All financial benefits and proceeds defendants WELLHAUSEN and OLIVELLA, received that was given and accepted with the intent to influence and reward defendants WELLHAUSEN and OLIVELLA in connection with any business, transaction, and series of transactions of the City involving things of value of $5,000 or more, that is, conducting favorable zoning and plumbing inspections on the Granville property; and

(b) Lot 10 in Donovan and Others Subdivision of Lot 1 and the North 148 Feet of Lot 2 in Rosehill Cemetery Company's Subdivision in the Southeast ½ of the Northeast ¼ of Section 6, Township 40 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois, the real property or its address commonly known as 1637-39 W. Granville/6139-41 N. Paulina, Chicago IL 60660, Real Property tax identification number 14-06-217-001-0000.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

(a) Cannot be located upon the exercise of due diligence;

(b) Has been transferred or sold to, or deposited with, a third party;

(c) Has been placed beyond the jurisdiction of the Court;

(d) Has been substantially diminished in value; or

(e) Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY